AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

*for the*

Southern District of California

FILED

OCT 0 6 2017

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Samsung Cellular Telephone; Model SM-G900P;<br>FCCID: A3LSMG900P;<br>SIM Card 89011200000452629537 | )<br>)<br>)<br>)<br>)<br>)<br><br>Case No. **17MJ3731** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1.

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960, & 963 | Importation of Cocaine and Conspiracy to Import Cocaine |

The application is based on these facts:

See attached affidavit of HSI Special Agent Jess Pavlovicz

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jess Pavlovicz, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **10-6-17**

_____
*Judge's signature*

City and state: San Diego, California

Hon. Nita L. Stormes, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT**

I, Jess Pavlovicz, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.      This affidavit supports an application for a warrant to search the following:

    a.      Samsung Cellular Telephone; Model SM-G900P;
           FCCID:  A3LSMG900P; SIM Card 89011200000452629537
           (the **"Target Device"**)[1]

as described in Attachment A-1, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Section(s) 952, 960, and 963– Importation of Controlled Substances and Conspiracy to Import Controlled Substances. This search supports the investigation and prosecution of Donald Melvin CONNELLY for the crimes mentioned above.  A factual explanation supporting probable cause follows.

2.      The **Target Device** was seized on June 5, 2017 at the San Ysidro Port of Entry in San Diego, CA. The **Target Device** was seized from CONNELLY pursuant to his arrest for importation of federally controlled substances.  The **Target Device** is currently stored as evidence at United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, Seized Property Vault, 2255 Niel Bohrs Court, San Diego, CA 92154.

---

[1] On August 16, 2017, this Court signed a Search and Seizure Warrant in Case No. 17-MJ-2885, *In the Matter of the Search of Samsung Cellular Telephone; Model SM-A500M; IMEI: 356309063860345; SIM Card 8952020915-511000290F*.  Since that time, the United States has discovered that the information provided on the original warrant—specifically, the model of the phone, the IMEI number, and the SIM Card number—was inaccurate.  This warrant provides the accurate information—including the model of the phone, the FCCID number, and the SIM Card number—for the Samsung Cellular Telephone in Defendant Donald Connelly's possession at the time of his arrest on June 5, 2017.  This Affidavit is almost identical to the previous Affidavit submitted on August 16, 2017, with the exception of the identification information regarding the Samsung Cellular Telephone (the **Target Device**), which has been changed, and the information regarding co-Defendant Patricia GARZA's phone and iPad, which has been removed.

3.     Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B-1.

4.     The information contained in this affidavit is based upon my experience and training, and consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5.     I am a Special Agent and currently employed with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"). I have held my current position with HSI since September 2015. I am a graduate of the Criminal Investigator Training Program and the Immigration and Customs Enforcement Special Agent Training Program at the Federal Law Enforcement Training Center ("FLETC"). During the course of my training at FLETC, I learned fundamentals of how to conduct criminal investigations including, but not limited to, gathering of evidence, preservation of a crime scene, and use of electronic evidence – all in relation to violations of the United States Code.

6.     I hold a Bachelor's Degree in Legal Studies from American Military University. I am a graduate of the Ohio Peace Officer Training Academy and I worked in law enforcement in Ohio from May 1994 – July 1998. I have attended several advanced training classes.

7.     Currently, I am assigned to a Narcotics Group in San Ysidro, California. I primarily investigate violations of the United States Code that stem from the International border between Mexico and the United States, including narcotics

smuggling. I have participated in investigating various drug trafficking organizations that are involved in the acquisition, importation, transportation, and distribution of controlled substances into and through the Southern District of California. I have spoken with other agents with extensive experience in narcotics smuggling investigations.

8.   I have arrested or participated in the arrest of numerous persons for violations of the Controlled Substances Act. In these cases, I have conducted interviews with the arrested persons and their associates, as well as cooperating individuals and informants. I have conducted surveillance of narcotics smugglers as they conduct their smuggling activity while crossing the border from Mexico into the United States, and while operating inside the United States. I have executed search warrants on cellular phones used by narcotics smugglers in furtherance of their smuggling activities. Through these investigative activities, I have gained a working knowledge and insight into the typical activity of narcotics smugglers, and the structure of their narcotics smuggling networks. I have also gained information as to the normal operational habits of persons who make their living as narcotics smugglers.

9.   In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

10.   Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

     a.   Drug smugglers will use cellular/mobile telephones or other mobile devices (such as iPads) because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

b.   Drug smugglers will use cellular/mobile telephones or other mobile devices (such as iPads) because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c.   Drug smugglers and their accomplices will use cellular/mobile telephones or other mobile devices (such as iPads) because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d.   Drug smugglers will use cellular/mobile telephones or other mobile devices (such as iPads) to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e.   Drug smugglers will use cellular/mobile telephones or other mobile devices (such as iPads) to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f.   Drug smugglers and their co-conspirators often use cellular/mobile telephones or other mobile devices (such as iPads) to communicate with load drivers who transport their narcotics and/or drug proceeds.

g.   The use of cellular telephones or other mobile devices (such as iPads) by smugglers tends to generate evidence that is stored on the cellular telephones, or other mobile devices (such as iPads) including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

11. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones or other mobile devices (such as iPads) can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating

4

these conspiracies that searches of cellular/mobile telephones or other mobile devices (such as iPads) yields evidence:

    a.    tending to identify attempts to import cocaine or some other federally controlled substance from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of cocaine or some other federally controlled substance from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in the importation of cocaine or some other federally controlled substance from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of cocaine or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

12.    On June 5, 2017, Donald Melvin CONNELLY and Patricia GARZA entered the United States from Mexico through the San Ysidro, California, Port of Entry as the driver and passenger, respectively, of a grey 2002 Mazda 626 bearing California license plate 4VJR891.

13.    A Customs and Border Protection ("CBP") Officer was assigned to Vehicle Primary Lane #21 at the San Ysidro Port Of Entry when a grey Mazda 626, bearing California license plate "4VJR891" approached his booth and the occupants

applied for entry. CONNELLY presented a valid U.S. Passport Card and GARZA presented an expired U.S. Passport for entry. The CBP Officer asked CONNELLY if he was bringing anything back from Mexico and CONNELLY answered in the negative. The CBP Officer referred the vehicle and occupants to Secondary Inspection due to a computer generated alert.

14.     During Secondary Inspection, a CBP Officer conducted a Z-Portal X-Ray scan of the vehicle. The CBP Officer observed anomalies in the rear seats of the vehicle. As a result, after the Z-Portal scan, a CBP Officer conducted an intensive seven-point inspection of the vehicle and discovered a total of thirty-one (31) packages concealed within both the rear seat and the floor of the vehicle. A CBP Officer probed the packages and found that they contained a white powdery substance that field-tested positive for the characteristics of cocaine. The 31 packages weighed approximately 36.90 kilograms (81.35 pounds).

15.     During a post-Miranda interview, GARZA stated that she used the iPad to communicate with her recruiter, to set up meetings, and to get directions for the smuggling event.[2] GARZA also stated that CONNELLY was aware of the smuggling event and was also being paid for the smuggling event.

16.     The **Target Device** was discovered and seized by CBP officers at the time of CONNELLY's arrest. HSI Special Agents assumed custody of the **Target Device**.

17.     Based upon my experience investigating narcotics traffickers and the particular investigation in this case, I believe that CONNELLY likely used the **Target Device** to coordinate the importation of federally controlled substances into the United States. In addition, I believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Device** which may identify other persons involved in narcotics trafficking activities.

---

[2] In her post-arrest interview, GARZA told agents that she believed she was smuggling currency into the United States for an individual she knew to be a member of a cartel.

Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of GARZA and CONNELLY, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the **Target Device**.

18.    Finally, I also know that narcotics trafficking activities entail intricate planning to successfully evade detection by law enforcement.  In my professional training, education and experience, I have learned that this requires planning and coordination in the days, weeks, and often months prior to the event.  Given this, I request permission to search the **Target Device** for items listed in Attachment B-1, beginning on May 5, 2017, up to and including June 5, 2017.

## METHODOLOGY

### *Target Devices 1*

19.    It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device.  For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network.  Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store

information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** and its memory card will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

29. Based on all of the facts and circumstances described above, there is probable cause to conclude that CONNELLY used the **Target Device** to facilitate violations of Title 21, United States Code, Section(s) 952, 960, and 963.

30. Because the **Target Device** was promptly seized during the investigation of CONNELLY's smuggling activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by CONNELLY continues to exist on the **Target Device**. As stated above, I believe that the date range for this search is from May 5, 2017 through June 5, 2017.

8

1    31.   WHEREFORE, I request that the court issue a warrant authorizing law
2 enforcement agents and/or other federal and state law enforcement officers to search
3 the items described in Attachment A-1, and the seizure of items listed in Attachment
4 B-1, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Jess Pavlovicz
Special Agent

Subscribed and sworn to before me this _____ day October, 2017.

Hon. Nita L. Stormes
United States Magistrate Judge

9

## ATTACHMENT A-1

### PROPERTY TO BE SEARCHED

The following property is to be searched:

Samsung Cellular Telephone; Model SM-G900P;
FCCID:  A3LSMG900P; SIM Card 89011200000452629537
(the **"Target Device"**)

The **Target Device** is currently stored at the Seized Property Vault, 2255 Niel Bohrs Court, San Diego, CA 92154.

## ATTACHMENT B-1

### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephones for evidence described below. The seizure and search of the cellular/mobile telephones shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephones will be records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data for the period of May 5, 2017 to June 5, 2017.

a.  tending to identify attempts to import cocaine or some other federally controlled substance from Mexico into the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of cocaine or some other federally controlled substance from Mexico into the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in the importation of cocaine or some other federally controlled substance from Mexico into the United States;

d.  tending to identify travel to or presence at locations involved in the importation of cocaine or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Section 952, 960 and 963.